United States District Court
Southern District of Texas
**ENTERED**
April 01, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DRAWBRIDGE ENERGY US VENTURES, LLC, DRAWBRIDGE ENERGY OPERATION & MANAGEMENT, LLC, ORIENT FRC (US) LLC, and MICHAEL KEENER, | § § § § § § | |
| Plaintiffs, | § | CIVIL ACTION NO. 4:20-CV-03570 |
| VS. | § § § | |
| FEDERAL INSURANCE COMPANY, | § § § | |
| Defendant. | § | |

## ORDER

The Court has before it a motion for summary judgment filed by the Defendant (Doc. No. 29), as well as a cross-motion for partial summary judgment filed by Plaintiffs (Doc. No. 18). For the reasons explored below, the Court hereby **GRANTS** Defendant's motion and **DENIES** Plaintiffs' motion.

### I. Background

A. Introduction

This is an insurance dispute involving a claims-made insurance policy issued by Defendant Federal Insurance Company ("Defendant" or "Federal") to first-named insured Drawbridge Energy US Holdings, LLC. Identified as insureds under the policy are Plaintiffs Drawbridge Energy US Ventures, LLC, Drawbridge Energy Operation & Management, LLC, Orient FRC (US) LLC, and Michael Keener (collectively, "Plaintiffs"). Plaintiffs sued Federal for breach of contract and insurance code violations when Federal refused to defend Plaintiffs in another lawsuit ("the underlying claim"). (Doc. No. 1). Federal filed a counterclaim for declaratory judgment, seeking

a declaration that it had no obligation to provide coverage for the underlying lawsuit under the policy. (Doc. No. 12, at 24–29).

B. <u>The Underlying Claim</u>

On July 10, 2018, Molopo Energy Limited ("Molopo") filed the underlying lawsuit in the 270th District Court of Harris County, Texas, against Drawbridge Energy Holdings Limited[1] and various Plaintiffs, including Drawbridge Energy US Ventures, LLC, Drawbridge Energy Operation & Management, LLC, and Orient FRC (US) LLC. (Doc. No. 1, Ex. 3). Then, on August 30, 2018, Molopo filed a first amended petition adding claims against Michael Keener[2] (a Plaintiff herein) and others. (Doc. No. 1, Ex. 4). That same day, Molopo's subsidiary, Orient FRC Limited, filed a plea in intervention against the same defendants identified in the first amended petition, based upon similar allegations. (Doc. No. 1, Ex. 5).

In the underlying lawsuit, Molopo sought to enjoin Plaintiffs from "expending, investing, or otherwise disposing of what remains of approximately $21,000,000.00" that was transferred to them as part of an allegedly "invalid and voidable" transaction. (Doc. No. 1, Ex. 3, at 1).[3] The following paragraphs summarize the allegations made by Molopo in the underlying lawsuit.

Molopo is a publicly listed Australian entity that violated listing rules promulgated by the Australian Securities Exchange (the "Exchange"). (Doc. No. 1, Ex. 3, at 2). In July 2017, as a result of the violations, the Exchange suspended trading of Molopo's shares. (*Id.*). In early 2018,

---

[1] Drawbridge Energy Holdings Limited is not an insured under the policy and is not a Plaintiff in this insurance dispute. (Doc. No. 1, at 8); (Doc. No. 29, at 18 n.54).

[2] Michael Keener is the Secretary and a Manager of Drawbridge Energy Operation & Management, LLC; Director of Drawbridge Energy Holdings Limited; and Managing Member of Drawbridge Energy US Ventures, LLC. (Doc. No. 18, Ex. 6, at 1).

[3] Apparently, the underlying lawsuit has been settled—the state trial court entered an Agreed Judgment before the inception of this lawsuit. *See Molopo Energy Ltd. v. Drawbridge Energy Holdings Ltd.*, No. 2018-46061 (270th Dist. Ct., Harris County, Tex. Aug. 20, 2018).

Molopo provided approximately $23,500,000 to its wholly owned subsidiary, Orient FRC Limited, purportedly in furtherance of an oil and gas exploration project in Florida. (*Id.* at 11, 104). Orient FRC Limited subsequently used $21,000,000 of this amount to fund an intercompany loan to its wholly owned subsidiary, Orient FRC (US) LLC. (*Id.* at 11).

Despite the suspension on trading—and in alleged violation of Australian securities regulations—Orient FRC Limited entered into a contribution agreement with Drawbridge Energy Holdings Limited. It did so without disclosing the agreement to Molopo's shareholders. (*Id.* at 2). The contribution agreement was entered into on February 21, 2018, and the deal closed on March 7, 2018. (*Id.* at 11 & n.36). The agreement contemplated a combination transaction, by which Orient FRC Limited transferred 100% of its interest in its wholly owned subsidiary, Orient FRC (US) LLC, to Drawbridge Energy Holdings Limited in exchange for 30% of the non-voting shares in Drawbridge Energy Holdings Limited (the "combination transaction"). (*Id.* at 11). At the time of the contribution agreement's execution, Orient FRC (US) LLC's sole assets consisted of the $21,000,000.00 in intercompany loan proceeds. (*Id.*). The intercompany loan was forgiven following completion of the combination transaction. (*Id.* at 12).

Molopo alleged that the contribution agreement and resulting combination transaction were void because each required the approval of Molopo's shareholders under the Exchange's listing rules and Molopo's constitution. (*Id.* at 15). According to Molopo, "[e]ven the slightest of due diligence at the time of the Contribution Agreement closing would have revealed that the transaction would likely be challenged and declared invalid by certain Molopo shareholders." (*Id.* at 4). Molopo sought an injunction to prevent expenditure of the $21,000,000; a declaration that the contribution agreement and resulting transaction was void; and claims for unjust enrichment/money had and received. (*Id.* at 15–17). Molopo's first amended petition added a claim

for aiding and abetting the breach of fiduciary duty against a principal of the underlying defendants, Michael Keener, who allegedly advised Molopo's financial director "to purchase a US entity that Keener owned to easily get money wired out of Molopo to the United States," and approached the financial director about the contribution agreement. (Doc. No. 1, Ex. 4, at 4, 16, 19–20).

### C. The Insurance Policy and Federal's Denial of Coverage

Federal issued an insurance policy to Drawbridge Energy US Holdings, LLC with a coverage period from June 6, 2018, to June 6, 2019. (Doc. No. 18, Ex. 1, at 8). The parties do not dispute that the Plaintiffs are insureds under the policy. (Doc. No. 18, at 13); (Doc. No. 30, at 11). Coverage under the insuring clauses of the policy's Directors & Officers and Entity Liability Coverage Part ("D&O Part") provides that Federal shall pay for a loss on account of a claim "first made" during the policy period. (Doc. No. 18, Ex. 1, at 27). "Claim" is defined to include any "written demand first received by an Insured for monetary or non-monetary relief, including injunctive relief," or any "civil proceeding commenced by the service of a complaint" against an insured for a "Wrongful Act." (Doc. No. 18, Ex. 1, at 28–29).

Federal denied coverage for the underlying lawsuit, primarily on the basis that the underlying lawsuit was a "Related Claim" deemed to have been made before the policy period. (Doc. No. 18, Ex. 7, at 2–3). The general terms and conditions of the policy provide: "All Related Claims shall be deemed a single Claim made in the Policy Year in which the earliest of such Related Claims was first made . . . ." (Doc. No. 18, Ex. 1, at 12). The policy defines "Related Claims" to mean "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." (Doc. No. 18, Ex. 1, at 11).

"Wrongful Act" is defined to include any actual or alleged "act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by" any insured. (Doc. No. 18, Ex. 1, at 31).

On May 17, 2018—before the policy period commenced—Drawbridge Energy Holdings Limited received a letter ("Keybridge Letter") from Keybridge Capital Limited ("Keybridge"), the second largest shareholder of Molopo, stating that in September 2017 Keybridge had commenced proceedings against Molopo in connection with Molopo's "alleged oppressive conduct in breach of the Australian Corporations Act and in relation to Molopo's breaches of the [Exchange's] Listing Rules." (Doc. No. 29, Ex. 1, at 100). In the letter, Keybridge asserted that Drawbridge Energy Holdings Limited had knowledge of Molopo's status on the Exchange when it entered into the February 21, 2018 contribution agreement and therefore faced liability under Australian law "to the extent it has received Molopo's or Orient [FRC Limited]'s property." (Doc. No. 29, Ex. 1, at 101). Keybridge requested that "Drawbridge and any subsidiary or associated entity provide an <u>urgent written undertaking</u> that it will not disperse any of the property that it has received from Molopo or Orient, including property received through its subsidiaries or controlled entities or affiliates, until such as time as the Orient Transactions are approved by the Molopo shareholders." (Doc. No. 29, Ex. 1, at 102) (emphasis in original).

Federal's position is that the Keybridge Letter and the underlying suit are a "Related Claim" deemed "first made" on May 17, 2018—20 days before the policy period began on June 6, 2018. (Doc. No. 18, Ex. 7, at 3). Federal also applied the "Pending or Prior Proceedings Exclusion," which precludes coverage for claims "based upon, arising from or in consequence of any written demand, suit or other proceeding" against any insured prior to June 6, 2018. (Doc. No. 18, Ex. 1, at 31); *see* (Doc. No. 18, Ex. 7, at 3). Federal also explained its position that coverage

5

was precluded based on Plaintiffs' breach of the warranty contained in their insurance application, which represented that "[n]o person or entity proposed for coverage is aware of any fact, circumstance, or situation" potentially giving rise to a covered claim under the proposed policy. (Doc. No. 29, Ex. 1, at 95); *see* (Doc. No. 18, Ex. 7, at 3).

D. This Lawsuit

On October 19, 2020, Plaintiffs filed suit against Federal, asserting causes of action for breach of contract and for violations of Chapter 542 of the Texas Insurance Code. (Doc. No. 1, at 8–9). Federal answered and counterclaimed, seeking a declaration that it owes Plaintiffs no coverage under the policy and no duty to defend them against the underlying suit.

Plaintiffs filed a Motion for Partial Summary Judgment on the issue of Federal's duty to defend. (Doc. No. 18). Plaintiffs move for the Court to declare that Federal has a duty to defend the claims asserted in the underlying lawsuit. (*Id.* at 24). Federal filed a cross-motion for summary judgment arguing that it has no coverage for the underlying lawsuit because: (1) the policy's Related Claims provision deems the underlying claim not "first made" in the policy period; (2) the policy's Pending or Prior Proceedings Exclusion precludes coverage; (3) the Plaintiffs' breach of warranty in their application for the policy precludes coverage; and (4) the fortuity doctrine bars coverage. (Doc. No. 29, 8–9).

Federal responded to Plaintiffs' Motion (Doc. No. 30), to which Plaintiffs replied (Doc. No. 34). Plaintiffs then filed a response to Federal's Motion (Doc. No. 35). Federal then filed a consolidated reply in support of its Motion and sur-reply in opposition to Plaintiff's Motion (Doc. No. 36). Most recently, Federal filed a supplemental brief in support of its Motion in light of recent authority from the Supreme Court of Texas. (Doc. No. 40). Plaintiffs subsequently filed a response to Federal's supplemental brief. (Doc. No. 42).

## II. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

## III. Analysis

One of the key issues in this case is whether the Keybridge Letter constitutes notice of a claim. The Plaintiffs argue that it does not and, moreover, that the Court is confined to looking solely at the policy and the underlying lawsuit.

### A. Can the Court Consider the Keybridge Letter Under the Eight-Corners Rule?

An insurer owes its insured a duty to defend if, in the underlying lawsuit, "the plaintiff's factual allegations potentially support a covered claim." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268

7

S.W.3d 487, 490 (Tex. 2008) (citing *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)). In deciding whether an insurer has a duty to defend, the Court ordinarily follows the "eight-corners rule" which provides that the duty to defend is determined solely by reviewing the insurance policy and the plaintiff's pleadings in the underlying lawsuit. *See id.* at 491; *see also LCS Corrections Servs., Inc. v. Lexington Ins. Co.*, 800 F.3d 664, 668 (5th Cir. 2015); *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015). The focus is on the factual allegations in the underlying complaint, not on the legal theories asserted. *See Test Masters*, 791 F.3d at 564 (citing *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014)). The Court must consider the factual allegations in the underlying complaint "without regard to their truth or falsity and resolve all doubts regarding the duty to defend in the insured's favor." *Id.* (cleaned up). The Court then compares the allegations made to the policy language. If the underlying complaint "potentially includes a covered claim, the insurer must defend the entire suit." *Id.* (quoting *Nokia*, 268 S.W.3d at 491).

If the complaint in the underlying lawsuit clearly alleges facts that would exclude coverage under the insurance policy, there is no duty to defend. *See Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 528 (5th Cir. 2004) (citing *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982)). If, however, it is clear there is a duty to defend, or if it is unclear from the complaint in the underlying lawsuit whether the factual allegations fall within the policy's coverage, the "insurer is obligated to defend if there is, potentially, a case under the complaint within the coverage of the policy." *See Nokia*, 268 S.W.3d at 491; *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). As a general rule, the Court may not "(1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine

8

factual scenarios which might trigger coverage." *Test Masters*, 791 F.3d at 564 (quoting *Gore Design*, 538 F.3d at 369).

Based on the factual allegations in the underlying complaint, the underlying lawsuit would appear to constitute a claim within the meaning of insurance policy. Indeed, Federal admits in its answer that "the Underlying Suit is a civil proceeding commenced by the service of a complaint or similar pleading, and thus the Underlying Suit, including any pleadings filed within that civil proceeding, constitutes a Claim under the Policy." (Doc. No. 12, at 7). Nonetheless, Federal contends that it has no duty to defend Plaintiffs for the underlying lawsuit because it was a claim first made on May 17, 2018, outside of the policy period. Federal's contention, however, is based on the Keybridge Letter, which is extrinsic evidence outside the insurance policy and the plaintiff's pleadings in the underlying lawsuit.

Plaintiffs contend that the eight-corners rule prevents this Court from reviewing the Keybridge Letter to determine whether Federal had a duty to defend Plaintiffs under the policy. (Doc. No. 18, at 14–23). Federal urges this Court to consider the Keybridge Letter as extrinsic evidence based upon the authority of the Supreme Court of Texas's recent decision in *Monroe Guaranty Insurance Company v. BITCO General Insurance Corp.*, No. 21-0232, 2022 WL 413940 (Tex. Feb. 11, 2022). (Doc. No. 40). In *Monroe*, the Supreme Court of Texas explained that the eight-corners rule "remains the initial inquiry to be used to determine whether a duty to defend exists." 2022 WL 413940, at *6. Nonetheless, the court stated that courts may consider extrinsic evidence, in addition to the policy and the underlying petition,

> if the underlying petition states a claim that could trigger the duty to defend, and the application of the eight-corners rule, due to a gap in the plaintiff's pleading, is not determinative of whether coverage exists, . . . provided the evidence (1) goes solely to an issue of coverage and does not overlap with the merits of liability, (2)

9

>does not contradict facts alleged in the pleading, and (3) conclusively establishes the coverage fact to be proved.

*Id.*

Here, the underlying pleadings are not determinative of whether coverage exists, because they do not "contain the facts necessary to resolve the question of whether the claim is covered." *See Monroe*, 2022 WL 413940, at *6. Resolving the question of whether a claim is covered by a claims-made policy requires the Court to determine when the claim was made, because "a 'claims-made' policy covers the insured only 'for claims made during the policy [period].'" *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658 n.2 (5th Cir. 1999) (alteration in original) (quoting *National Union Fire Ins. Co. v. Talcott*, 931 F.2d 166, 168 n.3 (1st Cir. 1991)). The underlying pleadings are silent as to whether a related claim was made prior to the inception of the policy period.

The Court concludes that the Keybridge Letter falls within the *Monroe* exception and may be considered as extrinsic evidence. First, the letter goes solely to the coverage issue of when the claim was first made and does not overlap with the merits of liability. Second, it does not contradict facts alleged in the underlying pleadings; in fact, it presages the underlying petition. Third, the letter conclusively goes to the heart of the pivotal issue, as it evidences that the claim against the Plaintiffs was first made prior to the inception of the policy period. Thus, the Keybridge Letter may be considered in determining whether Federal had a duty to defend Plaintiffs under the policy. *See Monroe*, 2022 WL 413940, at *6.

Plaintiffs also contend that, even if the Keybridge Letter is admissible, it does not constitute a "Claim" against an insured. (Doc. No. 35, at 13). In Plaintiffs' view, the letter discusses wrongful actions taken by Molopo, not Plaintiffs, and threatens to initiate proceedings against Molopo or its

10

directors only. (*Id.*) The Court disagrees. The letter alleges "Drawbridge and its principals"[4] knew about Molopo's violations of Exchange rules before entering into the combination transaction. The letter goes on to state:

> Due to its knowledge, *Drawbridge* [Energy Holdings Limited] *is liable as an accessory, knowing recipient or party* involved in the contraventions of Australia law by the Molopo Board to the extent it has received Molopo's or Orient's property. *Simply put, Australian law imposes liability on parties who knowingly assisted, or knowingly receive property in, a breach of a fiduciary duty.* Property received as a result of knowing receipt or assistance is held on trust by that party for the true owner of that property (in this case, Molopo).
>
> . . .
>
> In light of this, *Keybridge requires that Drawbridge and any subsidiary or associated entity provide an urgent written undertaking that it will not disperse any of the property* that it has received from Molopo or Orient, including property received through its subsidiaries or controlled entities or affiliates, until such as time as the Orient Transactions are approved by the Molopo shareholders.

(Doc. No. 29, Ex. 1, at 101–02) (italics added). The letter therefore constitutes a "Claim" under the policy because it is a "written demand first received by an Insured for . . . non-monetary relief, including injunctive relief" against an insured for a "Wrongful Act." (Doc. No. 18, Ex. 1, at 28–29). Here, although the letter was addressed to Drawbridge Energy Holdings Limited, it was copied to Plaintiff Drawbridge Energy Operation and Management, LLC, whom the parties agree is an insured. (Doc. No. 18, at 13); (Doc. No. 30, at 11). The letter requested non-monetary relief because it demanded an "urgent written undertaking" from Drawbridge Energy Holdings Limited and "any subsidiary or associated entity"[5] to "not disperse any of the property that it has received from Molopo or Orient." Moreover, the letter described a "Wrongful Act" by claiming Plaintiffs

---

[4] "Principal" includes Michael Keener, who holds various executive positions at the Drawbridge entities. *See supra* note 2.

[5] Plaintiffs, in an interrogatory response, withdrew their denial of Federal's allegation in its counterclaim that Plaintiffs Drawbridge Energy US Ventures, LLC, Drawbridge Energy Operation & Management, LLC, Orient FRC (US) LLC are subsidiaries or associated entities of Drawbridge Energy Holdings Limited. (Doc. No. 29, Ex. 1, at 86).

knowingly participated in a breach of fiduciary duty by accepting Molopo's property in contravention of Australian law and contended that "Australian law imposes liability on parties who knowingly assisted, or knowingly receive property in, a breach of a fiduciary duty."

Since the "Wrongful Act" alleged in the Keybridge Letter was based upon the same contribution agreement and resulting transaction that gave rise to the underlying lawsuit, the Keybridge Letter and underlying lawsuit are Related Claims under the policy. Accordingly, they are deemed to have been a single claim "first made" at the time of Keybridge Letter, and thus the claim was first made outside the policy period. Consequently, Federal owed no duty to defend the underlying lawsuit.

B. <u>Breach of Warranty</u>

The Court alternatively concludes that Federal owed no duty to defend on the basis that Plaintiffs breached a warranty in their insurance application.

> To void an insurance policy based on the insured's misrepresentation(s) in the policy application, the insurer has the burden to plead and prove the following: (1) the insured made a representation, (2) the representation was false, (3) the insurer relied upon the false representation, (4) the insured made the false representation with the intent to deceive the insurer, and (5) the false representation was material.

*Texas Farm Bureau Mut. Ins. Co. v. Rogers*, 351 S.W.3d 103, 107 (Tex. App.—San Antonio 2011, pet. denied) (citing *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980)). Federal raised this defense in their answer (Doc. No. 12, at 11–12) and moved for summary judgment on this issue (Doc. No. 29, at 28–30).

Section V of the insurance policy application warranted that "[n]o person or entity proposed for coverage is aware of any fact, circumstance, or situation which he or she has reason to suppose might give rise to any claim that would fall within the scope of the proposed Liability

12

Coverage Parts(s)." (Doc. No. 29, Ex. 1, at 95). Underneath that language is a box labelled "NONE" that was checked off by Michael Keener, who completed and signed the application on behalf of Drawbridge Energy US Holdings, LLC. (*Id.* at 95–96). Under the terms of the application, the applicant agreed that "if any such fact, circumstance, or situation exists, whether or not disclosed" in Section V, "any claim or action arising from such fact, circumstance, or situation is excluded from coverage under the proposed policy, if issued." (*Id.* at 95). Further, the policy required "any material change" in the answers to the application questions to be immediately notified to Federal for potential modification or withdrawal of any outstanding quotation. (*Id.*)

The application was dated May 7, 2018. Ten days later on May 17, 2018, Plaintiffs received the Keybridge Letter, thereby becoming aware of a claim that would fall within the scope of the insurance policy. Nevertheless, they failed to disclose this to Federal before the policy period began on June 6, 2018. Plaintiffs' nondisclosure of the potential claim—evinced by the Keybridge Letter—was material, because a reasonable insurer "would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Texas Farm Bureau Mut. Ins. Co.*, 351 S.W.3d at 108. Moreover, the application expressly stated that it was "the basis of the insurance policy," was "deemed to be attached to" and "a part of" the policy, and that Federal "will have relied on" the application in issuing any such policy. (Doc. No. 29, Ex. 1, at 95). Finally, the policy states that Federal "relied upon the declarations and statements in the Application," which are "the basis of the coverage" under the D&O Part and "shall be considered as incorporated in and constituting part of [the D&O Part]." (*Id.* at 44).

For these reasons, Federal is entitled to summary judgment on the alternate basis that Plaintiffs breached the warranties contained in their insurance policy application.

Due to the fact that the Court resolves the issue of Federal's duty to defend on the basis of the Related Claims provision and, alternatively, Plaintiffs' breach of warranty, the Court need not address the other grounds for summary judgment argued by Federal (i.e., the Pending or Prior Proceedings Exclusion and the fortuity doctrine). Moreover, Plaintiffs do not seek indemnification, only defense costs. (Doc. No. 35, at 14). The motion for summary judgment filed by Federal is hereby granted.

## IV.   Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment (Doc. No. 29) and **DENIES** Plaintiffs' motion for partial summary judgment (Doc. No. 18).

Signed at Houston, Texas, this __1st__ day of April, 2022.

Andrew S. Hanen
United States District Judge